FILED
DEC - 9 2011
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

EDWARD R. MYERS,
Plaintiff
v.
STEPHEN O. SIMPSON, et al.,
Defendants.

1:11cv552 (LMB/JFA)

MEMORANDUM OPINION

Before the Court is defendants' Motion to Dismiss the Amended Complaint [Dkt. No. 18]. The issues have been adequately briefed by the parties, and oral argument will not aid the decisional process. For the reasons discussed below, defendants' motion will be granted in all respects, except as to the trespass claim, which will be held in abeyance to allow the parties to brief the issue of whether the trespass notice is overbroad.

## I. BACKGROUND

Plaintiff pro se Edward Myers ("plaintiff" or "Myers") has filed an amended complaint naming as defendants Loudoun County Sheriff Stephen O. Simpson ("Simpson"), Deputy James Spurlock ("Spurlock"), and Loudoun County Sheriff's Office employee Audra Vogel ("Vogel"), individually and in their official capacities. See Am. Compl. at 1. Against each of the three defendants, Myers seeks damages and prospective injunctive relief under 42 U.S.C. § 1983 for alleged violations of his Fifth and Fourteenth Amendment

rights. See Am. Compl. at 1.[1] He also seeks declaratory and injunctive relief against Simpson in his official capacity for alleged violations of the Patsy T. Mink Equal Opportunity in Education Act ("Title IX"), 20 U.S.C. § 1681 et seq., and the Omnibus Crime Control and Safe Streets Act of 1968 ("Safe Streets Act"), 42 U.S.C. § 3789d(c). See Am. Compl. at 1.[2] Myers also claims that defendants fraudulently received federal grants in violation of the False Claims Act ("FCA"), 31 U.S.C. § 3729, et seq. Id. at 2. Finally, he seeks declaratory relief invalidating

---

[1] Although Myers names each defendant in his or her official capacity in the caption of the case, the complaint includes no specific allegations against Vogel and Spurlock in their official capacities. The defendants maintain that because Myers has failed to plead his § 1983 claim against defendants in their official capacities, he cannot obtain prospective injunctive relief. Myers' opposition states that he seeks prospective injunctive relief against these defendants to prevent them from excluding men from the LCSO self-defense classes, or refusing to offer comparable classes to males. In light of Myers' prayer for relief in his original complaint, his request for a declaration that his rights were violated, and his pro se status, the Court reads the amended complaint to request prospective injunctive relief. In any event, because, for the reasons to follow, the self-defense classes do not violate the United States Constitution, Myers cannot sustain his official capacity suit for substantive reasons.

[2] This is Myers' second attempt at litigating against the three defendants. After oral argument on defendants' first motion to dismiss, the original complaint was dismissed for various pleading defects. Leave was granted to re-file, although the Title IX and Safe Streets Act claims against Vogel and Spurlock and against Simpson in his individual capacity were dismissed with prejudice. See Bracey v. Buchanan, 55 F. Supp. 2d 416, 419 (E.D. Va. 1999) ("It is impossible to bring a Title IX action against an individual. . . . Title IX operates to condition an offer of federal funding on a promise by the recipient not to discriminate, in what amounts essentially to a contract between the Government and the recipient of funds.") (internal quotation marks omitted).

what he alleges is an overbroad trespass notice issued by the Loudoun County Sheriff's Office ("LCSO") that prevents him from being present at the Northern Virginia Criminal Justice Training Academy in Ashburn.

The facts alleged in the complaint and not in dispute are that, on multiple occasions, Myers was denied access to LCSO-sponsored "training workshops," which are reserved for women. Compl. ¶ 5.[3] The programs to which Myers seeks access are the various "Women's Self-Defense Workshop[s]," free classes that are open to all female Loudoun County residents over age 14 "to educate women on sexual assault issues and rape awareness." Id. ¶ 6 (quoting from LCSO email announcement for the "33rd Women's Self-Defense Workshop"). Myers tried to attend a class held on May 18, 2010, for which his wife was registered, but was prevented from doing so by LCSO employees, including defendant Vogel. Id. ¶¶ 6-7.

On November 9, 2010, Myers attempted to attend another "[w]omen only, [i]nformational class" called "Personal Safety for Women." Id. ¶ 10. He was informed by defendant Spurlock that he could not attend because the class was exclusively for women. Id. In April 2011, Myers received an announcement for the "35th Women's Self-Defense Workshop" on sexual assault and rape prevention and

---

[3] Because Myers' amended complaint does not re-state the factual allegations from the original complaint, the Court cites to both pleadings in laying out the basis for the allegations. As neither complaint separates the plaintiff's claims into respective counts, the Court addresses each claim based on the apparent legal basis for the claim, i.e., § 1983, Title IX, etc...

attempted to register by leaving a voicemail for Vogel. Id. ¶ 12. He also "communicated [to Sheriff Simpson via an LCSO employee] his expectation that he would be allowed to attend the class." Id. On April 26, 2011, when Myers attempted to enter the Northern Virginia Criminal Justice Training Academy, which is where all these classes were held, Simpson met him at the door and "delivered a trespass notice." Id. ¶ 13, Ex. C. Myers was told he would not be permitted to enter the Academy because "women, some of which [sic] might have been raped, would be uncomfortable with men in the classroom." Id. Myers alleges that he informed defendants that as recipients of federal funds, they were violating federal laws that prohibit sex discrimination. Id. ¶ 8.

Myers has received notice of the thirty-sixth and thirty-seventh women's self-defense workshops. See Compl. ¶ 14; Am. Compl. at 3-4. He alleges that defendants "continue to discriminate against men in general and Plaintiff in particular" by offering such classes only to women. See Am. Compl. at 3-4. Additionally, Myers claims that the trespass notice he received from Simpson on April 26, 2011 effectively prevents him from attending other public education events that are held at the same location as the women's self-defense classes. He seeks a declaration that his civil rights have been violated, an award of filing fees and costs, money damages sufficient to deter future violations, and various monetary remedies for the alleged FCA violation. See id. at 4-5.

## II. DISCUSSION

### A. Standard of Review

Pleadings filed by a pro se party must be "liberally construed." Erickson v. Pardus, 127 S. Ct. 2197, 2200 (2007) (internal quotations marks omitted). Under Fed. R. Civ. P. 12(b)(6), the Court must accept all of the complaint's well-pleaded allegations and view them in a light most favorable to the plaintiff. Smith v. Sydnor, 184 F.3d 356, 361 (4th Cir. 1999). This requirement applies to facts alone and not to legal conclusions. Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). Nevertheless, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." Id. at 1950 (internal quotation marks omitted). "Factual allegations must be enough to raise a right of relief above the speculative level, on the assumption that all of the allegations in the complaint are true." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

Accordingly, the Supreme Court has held that to satisfy the pleading requirements of Fed. R. Civ. P. 8(a), a complaint must include a plausible statement of the claim showing that the pleader is entitled to relief and providing the defendant with fair notice of "what . . . the claim is and the ground upon which it rests." Id. at 555. "Threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice." Iqbal, 129 S. Ct. at 1949. Rather, "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 1950.

**B. Section 1983 Claim**

Myers seeks "damages under . . . [42 U.S.C.] § 1983 via the due process and equal protection clauses of the 5th and 14th Amendments . . . against each defendant individually." Am. Compl. at 1. Section 1983, which prohibits a person acting "under color of" state law from depriving individuals of their federal rights, provides a cause of action to a plaintiff who must show that a government official actually violated the United States Constitution. See Hope v. Pelzer, 536 U.S. 730, 735-36 (2002). Government officials whose conduct involves the performance of discretionary functions are protected against § 1983 suits for damages by the doctrine of qualified immunity, which is an affirmative defense. Qualified immunity shields government officials who, "[d]espite . . . participation in . . . constitutionally impermissible conduct, . . . did not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" Hope, 536 U.S. at 739 (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). The "clearly established" standard of qualified immunity ensures that government officials are on fair notice that their conduct is

impermissible.

Defendants have raised qualified immunity as a defense. Therefore, Myers must show that the LCSO's decision to offer sexual assault and rape awareness classes exclusively to women, without including men or offering men comparable classes, is unconstitutional, and, furthermore, that the LCSO's decision violated a clearly established constitutional right such that defendants reasonably should have known their behavior was unconstitutional.

   1.   Constitutional Violation

Defendants argue that offering women-only self-defense classes does not violate equal protection because it meets the "exceedingly persuasive" standard established by the Supreme Court in gender discrimination cases. See United States v. Virginia, 518 U.S. 515, 533 (1996) (hereinafter, the "VMI case"). Specifically, the VMI case explained that for a policy with a gender-based classification to withstand equal protection scrutiny, that classification must serve "'important governmental objectives and the discriminatory means employed' [must be] 'substantially related to the achievement of those objectives.'" Id. (quoting Miss. Univ. for Women v. Hogan, 458 U.S. 718, 724 (1982)(applying intermediate scrutiny to strike down admissions policy excluding men because women were not previously disadvantaged in nursing school admissions)); accord Nguyen v. INS, 533 U.S. 53, 60-61 (2001). Relying on the VMI case,

defendants correctly argue that while so-called inherent differences cannot be grounds for sex-based classifications, governments can use sex-based classifications to, for example, compensate women for economic disadvantages they have suffered, promote employment opportunity, and "advance full development of the talent and capacities of our Nation's people." 518 U.S. at 533-34. Defendants, who maintain that women are seven times more likely than men to be raped during the course of their lives, argue that it is clearly constitutional to address past disadvantages and that the LCSO's free classes on sexual assault and rape awareness, which are designed to teach women how to protect themselves from becoming victims, serve the important governmental objective of seeking to reduce the "dramatically high prevalence" of sexual assault and rape. See Mem. Supp. Mot. to Dismiss Am. Compl. ("Defs.' Mem.") at 8. Defendants argue that the physical differences between the genders and the statistical differences where rape is concerned support the LCSO's decision to offer women-only self-defense classes. Id.

Myers does not dispute that disparate treatment based on gender can be constitutional. Rather, he argues that defendants have "failed to meet the standard required for legal sex discrimination" because the argument that women are more likely to be sexually assaulted is "a tiny factual fig leaf" in light of data reporting that one-fifth of sexual assault victims are male. See

Mem. in Opp'n to Def.'s Mot. to Dismiss Am. Compl. ("Pl.'s Opp'n") at 2-3 (disputing the LCSO's statistic that women are seven times more likely to be sexually attacked by asserting that the real number is four times more likely). Myers maintains that the LCSO has never held a male-only self-defense class, and in eighteen years has not held a co-ed class, yet it has held thirty-seven women-only classes. Id. Myers further argues that not only can men be victims of sexual assault, but men should also be able to attend these classes in order to protect women. Id. at 4. He goes on to argue at length that men are slightly more likely to be victims of non-sexual violent crime and if weapons are involved, a man's larger size may not protect him from injury. Id. at 3-4.

Although men, like women, are potential crime victims and could benefit from self-defense training, Myers' argument about violent crime generally confuses the primary issue here, which is whether the LCSO can constitutionally offer classes aimed at improving awareness about the potential for sexual assault and rape exclusively to women. With respect to the constitutionality of offering such classes, defendants correctly argue that Myers' "essay on the economic costs of violent crime is irrelevant, as is his speculation about the benefits of general self-defense training for all citizens." Reply to Opp'n to Mot. to Dismiss ("Defs.' Reply") at 2. Because the courses aim to educate women on sexual assault issues, defendants rightly point out that "[a]ny statistic

other than women's relative chances of being raped is not relevant to an equal protection analysis of the course." Id.

Sex-based classifications that rely on mere gender stereotypes are clearly unconstitutional after the VMI case. 518 U.S. at 532-35. A government wanting to benefit one gender must show that it is advancing an important governmental interest and that its means of achieving the interest are sufficiently narrowly tailored. Defendants' justification that "for a variety of social and economic reasons too complex to detail, women are, even using Plaintiff's statistics, four times more likely than men to be raped" so that "[w]hen it comes to being protected against rape, women are at an extreme disadvantage," meets the exceedingly persuasive standard. See Defs.' Reply at 3. Moreover, the LCSO has determined that women, some of whom may have been victims of sexual violence, are more likely to participate if the class is single-sex. See Compl. ¶ 13. Under equal protection jurisprudence, the arguments and statistical data cited by the parties justify the LSCO's measures to discriminate in favor of women with respect to rape prevention measures. Such measures, therefore, do not violate the Fourteenth Amendment.

2. Qualified Immunity and Clearly Established Rights

Even assuming, arguendo, that the women-only classes violate equal protection, Myers' request for damages fails because the defendants are protected by qualified immunity. See Harlow, 457

U.S. at 818 ("[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."); see also, e.g., Johnson v. Caudill, 475 F.3d 645, 651 (4th Cir. 2007) (decision may be unwise but not rise to a violation of clearly established law); Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992) ("Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.") (citing Anderson v. Creighton, 483 U.S. 635, 639-40 (1987)).

Myers advances no serious argument that under clearly established Fourth Circuit or Supreme Court law, women-only sexual assault and rape awareness and prevention classes are unconstitutional. Instead, he analogizes the LSCO's courses to class offerings of public grade schools and universities, but he cites no legal support for the argument that a special workshop offered by a local law enforcement agency is to be treated the same way, nor does he show that a public school would, in any case, be barred from offering a girls-only rape prevention class. Cf. Doe ex rel. Doe v. Vermilion Parish Sch. Bd., 421 F. App'x 366, 369-70 (5th Cir. 2011)(describing but not ruling on legal basis for single-sex public education); A.N.A. ex rel. S.F.A. v. Breckinridge Cnty. Bd. of Educ., No. 3:08cv4S, 2011 WL 2437809, at *5-8 (W.D.

Ky. June 13, 2011)(making fact-based inquiry into whether students are harmed by single-sex education).[4]

There is simply no factual or legal basis in this record to support the position that the defendants have lost their immunity from suit for violating "clearly established" constitutional law. The case law on gender classifications permits disparate treatment of persons based on gender where the government offers an "exceedingly persuasive" justification that does not rely on inherent prejudices or specious innate differences. Here, defendants have offered a legitimate justification for their actions. Therefore, even if the women-only sexual assault and rape awareness and prevention courses violated Myers' constitutional rights, the doctrine of qualified immunity would operate to bar the suit for damages. For these reasons, the § 1983 claim against the defendants will be dismissed.

C. **Title IX and Safe Streets Act Claims**

Myers also alleges that Simpson, in his official capacity, violated Title IX and the Safe Streets Act by engaging in unlawful

[4] In the same vein, Myers tries to depict defendants as having "rejected legal advice procured by Plaintiff." Pl.'s Opp'n at 5. In fact, the "legal advice" to which he refers are letters he obtained from the United States Department of Justice Civil Rights Division that merely explain that, because the LCSO is a recipient of federal funds, the Civil Rights Division has jurisdiction to investigate sex discrimination claims against it and that it was initiating an investigation based on Myers' formal complaint. See Compl., Exs. A, B. The letters do not, as Myers tries to suggest, establish that the Department of Justice found the LCSO program unconstitutional.

gender discrimination while accepting federal funds.[5] Title IX provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance," unless a specific exception applies. 20 U.S.C. § 1681(a). Authority over the last 15 years, in addition to the VMI case, demonstrates that single-sex education and other voluntary affirmative action may be appropriate under certain circumstances. For example, a Department of Education regulation states that even "[i]n the absence of a finding of discrimination on the basis of sex in an education program or activity, a recipient may take affirmative action to overcome the effects of conditions which resulted in limited participation therein by persons of a particular sex." 34 C.F.R. § 106.3(b).

Likewise, following notice and comment for implementing regulations promulgated pursuant to Title IX, the Department of Justice, alongside other federal agencies, addressed the "viability of single-sex programs such as an educational science program targeted at young women and designed to encourage their interest in a profession in which they are underrepresented." See Nondiscrimination on the Basis of Sex in Education Programs or

[5] Neither party presents case law specifically addressing the Safe Streets Act, but courts treat alleged discrimination in violation of that statute the same as alleged violations of other federal funding statutes. See, e.g., Ensley Branch NAACP v. Seibels, 31 F.3d 1548 (11th Cir. 1994).

Activities Receiving Federal Financial Assistance, 65 Fed. Reg. 52,858, 52,861 (Aug. 30, 2000)(codified at 28 C.F.R. pt. 54). The Department explained that "[s]uch courses may, under appropriate circumstances, be permissible as part of a remedial or affirmative action program" as provided for under Title IX regulations. Id.

Given the Court's previous finding that defendants have not violated the plaintiff's right to equal protection and given that regulations promulgated pursuant to Title IX permit affirmative action, the Court finds no legal basis for Myers' claim that Simpson has violated Title IX and the Safe Streets Act; therefore, those claims will be dismissed.

D. **False Claims Act Allegation**

Myers alleges that the defendants, while knowingly engaging in a pattern of unlawful sex discrimination, violated the FCA by falsely certifying to federal funding agencies that the LCSO implements non-discriminatory policies. See Am. Compl. at 2. In pertinent part, that statute provides that a civil penalty and treble damages may be imposed on an individual who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval . . . [or] knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim" to the United States Government. See 31 U.S.C. § 3729(a)(1)(A),(B). Myers cannot sustain this claim for numerous

reasons.[6] The principal reason is that the sheriff is a state constitutional officer, and the Supreme Court has held that states and state agencies are not subject to FCA qui tam liability. See Vt. Agency of Natural Res. v. United States ex rel. Stevens, 529 U.S. 765, 781-82 (2000)("[V]arious features of the FCA, both as originally enacted and as amended, far from providing the requisite affirmative indications that the term 'person' included States for purposes of qui tam liability, indicate quite the contrary.").[7] As such, the FCA claim will be dismissed.

**E. Overbroad Trespass Notice Claim**

Myers' last claim is that the trespass notice he received from Sheriff Simpson in April 2011 is overbroad and, therefore, unconstitutional. He asks the Court to issue declaratory relief

---

[6] In addition to the FCA claim's core substantive failing, Myers has failed to comply with the procedural preconditions for filing an FCA claim. Specifically, a person instituting an action pursuant to the FCA must file the complaint "in camera" and it "shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders." 31 U.S.C. § 3730(b)(2). Moreover, Myers acknowledges that he may not proceed pro se. The United States is the real party in interest in FCA litigation, and a non-attorney may not represent another individual or entity. United States ex rel. Brooks v. Lockheed Martin Corp., 237 F. App'x 802, 803 (4th Cir. 2007). Finally, FCA complaints are governed by the heightened pleading standard of Fed. R. Civ. P. 9(b), which the amended complaint does not meet. See, e.g., U.S. ex rel. Owens v. First Kuwaiti General Trading & Contracting Co., 612 F.3d 724, 731 (4th Cir. 2010) (citing United States ex rel. Wilson v. Kellogg Brown & Root, Inc., 525 F.3d 370, 373 (4th Cir. 2008)).

[7] This holding is consistent with the historical fact that "the FCA was enacted in 1863 with the principal goal of stopping the massive frauds perpetrated by large private contractors during the Civil War." Vt. Agency of Natural Res., 529 U.S. at 781 (alterations in original omitted).

nullifying the trespass notice. See Am. Compl. at 1; Pl.'s Opp'n at 6. The notice informs Myers that his "presence on or in" the Northern Virginia Criminal Justice Training Academy in Ashburn "will not be tolerated and that [he is] to refrain from entering therein or thereon for any reason whatsoever." Compl., Ex. C. Defendants acknowledge that Loudoun County public meetings having nothing to do with the women-only self-defense classes are also held at this facility, and they do not dispute that the trespass notice prevents Myers from attending those public meetings.

Neither side clearly or adequately frames the legal issues implicated here. Plaintiff cites no case in which a court invalidated an allegedly overbroad trespass notice on similar facts, nor have defendants adequately supported their position that a person has no liberty interest in attending government-sponsored meetings of public importance. Defendants also fail to explain why their legitimate interest in preventing Myers from disrupting the women-only self-defense classes cannot be served with a more narrowly tailored trespass notice. For these reasons, the parties will be directed to brief the trespass issue more thoroughly, unless they are able to resolve the scope of the notice themselves.

## III. CONCLUSION

For the above-stated reasons, the Court finds that Myers has failed to state a claim under § 1983 for gender discrimination and has also failed to state claims for violations of Title IX, the

Safe Streets Act, and the FCA. Accordingly, the defendants' motion to dismiss will be granted as to all claims in the original and amended complaints, except for the trespass claim. An Order implementing these decisions will be issued with this opinion.

Entered this 9th day of December, 2011.

Alexandria, Virginia

/s/

Leonie M. Brinkema
United States District Judge